**RESOLUTION TRUST CORPORATION,**
in its corporate capacity, Plaintiff,

v.

**Jake W. WRIGHT, R.L. Lockstone, Jr., Arthur N. Salisbury, Charles I. Kramer, Gerald W. Jameson, and William L. Davis, Defendants.**

No. CIV–92–2096–A.

United States District Court,
W.D. Oklahoma.

Nov. 22, 1993.

Tom Colbert, Colbert & Associates, Oklahoma City, OK, Robert E. Craddock, Jr., Larry H. Montgomery, Dyer James & Taylor, Memphis, TN, for Resolution Trust Corp.

Robert D. McCutcheon, Hastie & Kirschner, Terry W. Tippens, Stephen R. Stephens, Andrew L. Walding, Fellers Snider Blankenship, Bailey & Tippens, William E. Wallo, Day Edwards Federman Propester & Christensen, Stephen A. Sherman, Stephen A. Sherman & Associates, Deborah S. Block, Lytle Soule & Curlee, G. Patrick Garrett, Merrilyn B. Livermon, Claro & Claro, Oklahoma City, OK, for Jake W. Wright, R.L. Lockstone, Jr., Gerald W. Jameson.

William J. Doyle, III, Tulsa, OK, for Arthur N. Salisbury.

Robert D. McCutcheon, Hastie & Kirschner, William E. Wallo, Day Edwards Federman Propester & Christensen, Stephen A. Sherman, Stephen A. Sherman & Associates, Deborah S. Block, Lytle Soule & Curlee, G. Patrick Garrett, Merrilyn B. Livermon, Claro & Claro, Oklahoma City, OK, for Charles I. Kramer, William L. Davis.

## ORDER

ALLEY, District Judge.

In October 1989, plaintiff Resolution Trust Corporation ("RTC") was appointed as receiver for the Great Plains Savings and Loan Association ("Great Plains") due to a determination by regulatory agencies that the bank was insolvent. Later that month, Great Plains was reorganized by the Office of Thrift Supervision and took over the assets and claims of the RTC. In 1990, the reorganized bank also failed and once again the RTC was appointed as receiver. All claims were assigned back to the RTC in its corporate capacity on August 17, 1990. The RTC initiated this action against defendants, former officers and directors of Great Plains, on October 22, 1992. An amended complaint alleging breaches of fiduciary duty, gross negligence, negligence and negligence per se was filed on January 15, 1993.

Before the Court is Defendants' Motion To Dismiss Plaintiff's Claims For Breach Of Fiduciary Duty, Negligence, And Negligence Per Se, Or, In The Alternative, Motion For Summary Judgment, pursuant to Fed. R.Civ.P. 12 and 56(c).[1] As plaintiff has submitted a brief in opposition to defendants' motion and defendants have submitted a response, the motion is now ripe for decision. Based upon a review of the briefs and the applicable law, the Court will deny defendants' motion.

In support of their motion, defendants rely on a provision of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(k), which sets forth the standard of proof required to hold a director or officer personally liable for damages due to a bank's failure. The statute states, in part,

> A director or officer of an insured depositary institution may be held personally liable for monetary damages in any civil action by, or on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation-- . . . for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

12 U.S.C. § 1821(k) (West 1989). This section has been interpreted to allow the RTC to bring claims based on a lower standard than gross negligence, including negligence, if otherwise provided by relevant state law. *See F.D.I.C. v. Canfield*, 967 F.2d 443 (10th Cir.1992). Oklahoma common law permits actions against bank directors and officers to be maintained on a negligence standard. "At common law a bank director has the duty to act in good faith and with ordinary care and diligence when conducting the bank's affairs. Bank directors are liable for losses which could have been prevented by the exercise of such care in attending to their duties." *Gay v. Akin*, 766 P.2d 985, 991 (Okla.1988) *See also RTC v. Conner*, (W.D.Okla. June 1, 1993).

However, in 1992, the Oklahoma legislature enacted a statute which raised the

---

1. The Court notes that defendant Arthur N. Salisbury is not a party to this motion.

standard of proof on actions against bank directors and officers by the FDIC and the RTC under FIRREA. Made effective on July 1, 1992, Okla.Stat. tit. 6, § 712(C) states,

> After August 9, 1989, no claim or action seeking to recover money damages shall be brought by the Federal Deposit Insurance Corporation, Resolution Trust Corporation or other federal banking regulatory agency against any director or officer, including any former director or officer, of any insured financial depository institution as defined in the Financial Institution Reform, Recovery and Enforcement Act of 1989 unless such claim or action arises out of the gross negligence, or willful or intentional misconduct of such officer or director during his term of office with such insured financial institution.

Okla.Stat.Ann. tit. 6, § 712(C) (West 1993 Supp.). As "other applicable law" under 12 U.S.C. § 1821(k), this section would appear to foreclose the RTC from bringing claims under any theory with a burden of proof lower than gross negligence.

Defendants argue that § 712(C) therefore requires that plaintiff's claims based upon negligence, negligence per se and breach of fiduciary duty be dismissed as a matter of law. Plaintiff raises a host of responses to defendants' position, including challenging the constitutionality of § 712(C) under both the federal and Oklahoma constitutions and arguing that FIRREA preempts Oklahoma's statute. The Court declines to address each of plaintiff's arguments challenging § 712(C) because we find that the section runs afoul of the Oklahoma constitution.

Section 712(C) has already been found to violate the Oklahoma constitution because it retroactively affects RTC lawsuits pending at the time it became effective. *See RTC v. Alexander,* No. CIV–92–507–T (W.D.Okla. Feb. 24, 1993) (holding that § 712(C) violated art. V, § 52 of the Oklahoma constitution which prohibits the legislature from taking away a cause of action that has commenced). Plaintiff makes a similar argument with respect to art. V, § 54 of the state constitution. Section 54 states that "[t]he repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any *accrued right,* or penalty incurred, or proceedings begun by virtue of such repealed statute." Okla. Const. art. V, § 54 (West 1981) (emphasis added).[2] The key question, therefore, is whether the RTC's right to sue under the common law theories was an "accrued right" at the time § 712(C) was enacted. If so, the section interferes with the property interest of the RTC in pursuing its claims on bases other than gross negligence. *See* Okla. Const. art. II, § 7 (West 1981) (Oklahoma due process clause). *See also Ricks Exploration v. Oklahoma Water Resources Board,* 695 P.2d 498, 505 (Okla. 1984) (holding that art. II, § 7 prevents legislative interference with the exercise of vested rights).

A "vested" right may be created by either common law or by statute. *See Oklahoma Water Resources Board v. Central Oklahoma Master Conservancy District,* 464 P.2d 748, 755 (Okla.1968). "Once created, it becomes absolute, and is protected from legislative invasion by Art. 5, Secs. 52 and 54 of our Constitution." *Id.* The Oklahoma Supreme Court has stated, "As a general rule,

---

2. At first glance, this provision would appear to protect only accrued rights derived from the repealed statute that created the right. However, plaintiff refers to the same principle for accrued rights derived from common law and subsequently repealed or curtailed by statute. Indeed, in the past, Oklahoma courts have interpreted § 54 to prevent the legislature from rescinding accrued rights whose basis can be found in the common law, as well as accrued rights that derive from statutory enactment that is subsequently repealed. In *Ricks Exploration v. Oklahoma Water Resources Board,* 695 P.2d 498 (Okla. 1984), the Oklahoma Supreme Court invalidated an interpretation of a statute that attempted to

rescind a mineral owner's common law right to use of groundwater. The court stated,

> A mineral owner's claim to groundwater use is a "vested right" created by common law. Once created, it becomes absolute, and is protected from legislative invasion by Art. 5 §§ 52 and 54, Okl. Const. A vested interest will not be deemed abrogated or impaired except by explicit legislative extinguishment effective prospectively. Laws depriving a party of private rights should be strictly construed.

*Id.* at 504 (footnotes omitted). *See also Oklahoma Water Resources Board v. Central Oklahoma Master Conservancy District,* 464 P.2d 748, 755 (Okla.1968).

the accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued ..." *Cowart v. Piper Aircraft Corp.*, 665 P.2d 315, 318 (Okla. 1983). *See also Hammons v. Muskogee Medical Center Authority*, 697 P.2d 539 (Okla.1985). The time of accrual is determined by when the plaintiff could first maintain suit. *Cowart*, 665 P.2d at 318. The failure to exercise an accrued right before its repeal or amendment by statute in no way affects or lessens the right. *Hammons*, 697 P.2d at 542. A legislature may only extinguish the accrued right prospectively. *Ricks*, 695 P.2d at 504.

Section 712(C) explicitly refers to claims maintained by the RTC or the FDIC pursuant to FIRREA after August 9, 1989. However, the section was enacted on May 26, 1992 and given effect on July 1, 1992. As such, it attempts to destroy the right of the RTC or the FDIC to maintain suits on a basis less than gross negligence, a right that may well have existed prior to the statute's enactment. Indeed, it is undisputed that the RTC succeeded to the claims of Great Plains in 1990, before the enactment of § 712(C). At that time, it had the right to maintain an action against defendants, including the right to sue based upon negligence. By retroactively barring suit, § 712(C) attempts to destroy the RTC's vested rights. Significantly, § 712(C) does not work a merely procedural change, such as shortening the statute of limitations, in which case the statute could be given retroactive effect. *See Trinity Broadcasting Corp. v. Leeco Oil Company*, 692 P.2d 1364, 1366–67 (Okla.1984) ("Statutes affecting procedure only, as distinguished from those that affect substantive rights, may be applied retroactively ... Insofar as a statute of limitations does affect rights of action in existence when it becomes effective, it is held that ... it begins to affect rights in existence when the cause of action is first subjected to its operation."). Rather,

§ 712(C) retroactively destroys the RTC's substantive right to sue defendants based upon negligence. As such, the section runs aground on art. V, § 54 of the state constitution.

Defendants try to counter the vested rights argument by attempting to demonstrate that gross negligence, not negligence, would normally be the standard in any action against bank directors and officers. They point to the "business judgment rule," discussed by the Oklahoma Supreme Court in *Warren v. Century Bankcorporation, Inc.*, 741 P.2d 846 (Okla.1987), as setting a gross negligence standard.[3] Defendants assert this presumably because they would like to use the business judgment rule as a defense in this action. Plaintiff counters that *Warren* discussed the business judgment rule only in the context of parent/subsidiary transactions and, thus, is inapposite. Plaintiff's Brief at 23–24.

Defendants' reliance on the business judgment rule fails on several accounts. First, as plaintiff correctly notes, the transactions involved in the case at hand do not involve the kind of self-dealing concerns at issue in *Warren*. Moreover, the rule still requires that the officer or director be acting in his fiduciary capacity, the performance of which is an issue of fact that goes to the very heart of the RTC's claims against defendants. Furthermore, the fact that defendants intend perhaps to assert the rule as a defense makes the question one of fact and, therefore, would render either dismissal or summary judgment inappropriate at this phase of the litigation. Finally, defendants' contention that gross negligence is the standard for actions against bank officers and directors would seem to counter the very need for § 712(C). It is unlikely that the Oklahoma legislature would have enacted the statute if it already was the standard for such actions at common law.

Ultimately, defendants' motion lives or dies by the constitutionality of § 712(C). Be-

---

**3.** The business judgment rule protects the actions of corporate directors and officers unless "there is a *clear showing* that [they] committed a breach of trust." 741 P.2d at 848. The *Warren* court was evaluating transactions under an "intrinsic fairness" test in order to scrutinize certain transactions which may have involved self-dealing and

insider advantage on the part of majority shareholders. Because of the fiduciary relationships involved in *Warren*, the Oklahoma Supreme Court adopted the intrinsic fairness test to examine whether a corporate opportunity had been usurped.

**306**

cause the statute violates the Oklahoma constitution with respect to the RTC's claims against defendants, defendants cannot prevail on this basis. Accordingly, Defendants' Motion To Dismiss Plaintiff's Claims For Breach Of Fiduciary Duty, Negligence, And Negligence Per Se, Or, In The Alternative, Motion For Summary Judgment is DENIED.

It is so ordered.